5
THE FOX LAW CORPORATION, INC.
Steven R. Fox, SBN 138808
srfox@foxlaw.com
17835 Ventura Blvd., Suite 306
Encino, California 91316
Tel: 818.774.3545; Fax: 818.774.3707

Counsel for Debtor-in-Possession
Mini Mania, Inc.

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>Mini Mania, Inc.<br><br>Debtor. | Case No.: 2024-22456-11<br><br>DCN: SRF 1<br><br>Chapter 11<br><br>SECOND MOTION FOR AUTHORITY TO USE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS;<br><br>Date : September 9, 2024<br>Time : 9:00 a.m.<br>Place : Ctrm 28, 7th Floor |

To the Honorable Bankruptcy Judge:

Comes Now the Debtor and Debtor-in-Possession, Mini Mania, Inc. ("Mini" or the "Debtor"), with its Second Motion.

General Background. Mini sells parts and provides certain services such as engine rebuilds for Mini Cooper vehicles. Over the years, the Debtor expanded its offerings to provide parts for related classic British car marques (e.g. Triumph, Mini, Jaguar, Morris Minor and the Austin Bugeye Sprite and MG) that use many of the same parts that the Mini Cooper used.

The concurrently filed Declaration discusses the Debtor's operating and financial difficulties and solutions the Debtor intends to implement to reorganize. The difficulties

leading to the bankruptcy filing include a series of Merchant Cash Advance ("MCA") transactions that killed the Debtor's cash flow and monies and starved the Debtor of the ability to satisfy customer orders and to replenish its inventory. The Debtor has significantly reduced expenses and is working with suppliers to bring in new inventory. During the bankruptcy case, the Debtor has been hit by "lien claims" by MCAs seeking to obtain monies from PayPal and the Debtor has managed to get PayPal to decline to honor these claims. In addition, the Debtor has faced difficulties with PayPal itself putting unilateral freezes on monies owed to the Debtor and PayPal is one of the Debtor's primary methods of customer payment. The Debtor continues to work with PayPal to try to resolve the freezes.

The Debtor intends to remain in business. It does not intend to sell its assets but instead intends to propose a plan of reorganiztion.

Entities Asserting Interests in Cash Collateral. Many entities will assert security interests in cash collateral. The Debtor believes that Bank of America holds the senior lien in cash collateral. In its Memorandum, the Debtor outlines the adequate protection offered to all entities that may actually hold security interests in cash collateral and that are not effetively unsecured. For present purposes, the Debtor assumes (1) Bank of America is fully secured and that (2) its financing statement was properly recorded and perfected, (3) is valid and (4) that Bank of America's lien is the senior lien in cash collateral. For purposes here, the Debtor presumes that all other liens filed are properly records, perfect and valid though this may not be the case.

Mini seeks authority to use its monies to operate its business, and to do so first on an interim basis and then on a final basis. If the Debtor cannot use its cash collateral, it would need to cease its business operation and let employees go.

The Projection. The period is September 22, 2024, through December 28, 2024.

The Debtor's projection (Exhibit "A") reflects projected receipts, disbursements, net operating cash flows and beginning and ending cash balances. The Debtor

projects receipts of $827,000 during this period, disbursements of $807,000 (including the proposed payments to Bank of America), positive net cash flow and a projected increase in monies on hand from $47,869 to $60,647.

The Debtor's business typically has few receivables as customers pay before products are delivered.

Variances. The Debtor has to respond to customers' requests for products on short notice and so it requires variances under the projection. The Debtor has done its best to make reliable projections concerning income and expenses. However, budgeting is not an exact science, especially here where customers can make snap orders for products and the Debtor must comply or risk losing the customer. There may be considerable variance week to week and month to month. Given these uncertainties, the Debtor requests that it be permitted to vary from the proposed budget for expenses by as much as 20% in any one category where the projected spending is under $1,000 and vary from the proposed budget by as much as 15% as to any other category. If the Debtor determines it needs to vary from any one budgeted item by more than the 15% or 20% variances, the Debtor proposes that it provide written notice by email or telecopier of the variance only to Bank of America. It would have 48 business hours (which would be 2 business days) to object to the proposed variance. If it did not timely object, then the variance would be deemed approved. If Bank of America disapproved the proposed variance, then the Debtor would seek to set a hearing to obtain Court approval of the variance.

A 20% variance for smaller expenses under $1,000 is reasonable given (1) the cost in attorneys' fees to obtain a variance and (2) the relatively small amount of money involved in a short interim period. A 15% variance as to larger items is also appropriate as these likely will be higher than expected costs for products.

Rolling Unspent Budgeted Monies Forward. The projection is weekly. The Debtor will likely underspend in certain categories in some weeks and so requests that the Court authorize the Debtor to carry over from previous weeks any unused monies

to be used in the same categories in future weeks. Carried forward monies should not count toward the variances. While te Debtor projects sales and revenues on a weekly basis, some sales and revenue may come sooner or later than projected. If there is no rollover, then the Debtor may have insufficient monies in various categories.

<u>Applying Excess Gross Revenues to Costs of Goods Sold</u>. In some periods the Debtor's gross revenues may exceed projected gross revenues. If so, then the Debtor has more sales and it will have higher COGS and expenses. If its gross revenues exceed projected figures, the Debtor requests that it be permitted to apply up to 75% of such excess gross revenues to costs of goods sold and apply the balance to expenses.

<u>Adequate Protection</u>. The Debtor is offering to pay $1,900 monthly to Bank of America which appears to hold the senior interest in cash collateral with the monthly payment due the first week of each month during this period. The liens of those entities asserting interests in the estate's cash collateral are adequately protected for at least the following reasons:

    a.    The Debtor will continue to operate its business.

    b.    Operating the business creates additional revenues.

    c.    All assets are adequately insured.

    d.    Providing replacements lien to those entities asserting security interests and to the extent their prepetition lien attached to the Debtor's property prepetition and with the same validity, priority, and description of collateral. To be clear, if there is a defect in a security interest prepetition, that same defect would apply post-petition. By the same token, if a lien is effectively unsecured, such lien may later be voided.

The Debtor requests that the Court take the following actions:

1. Enter an order authorizing the Debtor to use cash collateral on a final basis for this period thorugh December 28,2024, together with the requested variances, rollover provisions and application of excess revenues to costs of goods sold;

4

2. Authorize the Debtor to pay the $1,900 adequate protection payment monthly to Bank of America;

3. Grant to entities asserting interests in the Debtor's monies, replacement liens in collateral of the estate; and

4. Such further relief as is appropriate and consistent with this Motion.

Dated: July 25, 2024 THE FOX LAW CORPORATION, INC.

/s/ Steven R. Fox
Steven R. Fox, counsel for Mini Mania, Inc. Debtor-in-Possession

5